Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in a Pre-Trial Agreement dated 20 March 1998, as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between Kenneth Love and Owens Masonry, Inc. on 28 October 1996.
3. Plaintiff's average weekly wage during all times relevant to this claim was $346.42, yielding a compensation rate of $231.62.
4. The following Stipulated Exhibits have been received into the evidentiary record:
1. Plaintiff's recorded statement — 9 pages
2. Basketball score sheets — 14 pages
3. Defendant's answers to plaintiff's interrogatories request for production of documents — 27 pages
4. Defendant's first set of interrogatories to plaintiff — 14 pages
5. Plaintiff's answers to defendant's interrogatories — 14 pages
6. I.C. Form 19 — 1 page
7. Medical Records — 39 pages
***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 32 years old at the time of the hearing before the Deputy Commissioner and was formerly employed by Owens' Masonry as a mason's assistant and general laborer. Plaintiff's duties included building scaffolds, mixing mud, pushing wheelbarrows, occasionally laying brick and, primarily, driving a forklift. Dan Owens, plaintiff's employer, Rodney Palmer, plaintiff's immediate supervisor, and John Smith, another supervisor, testified that plaintiff drove the forklift approximately seventy-five percent of the time and that plaintiff rarely laid brick.
2. On 28 October 1996, plaintiff was working at the Wake Forest Soccer Stadium. Plaintiff testified that he was physically lifting and placing precast concrete blocks on a pallet so that they could later be moved by forklift. Plaintiff claimed that this procedure was necessary as the forklift was not on the job site, and that after moving two or three of these concrete blocks, he felt a pain in his left shoulder. Plaintiff also testified that Mr. Palmer heard his complaints of left shoulder pain.
3. On 5 November 1996, plaintiff sought medical treatment from Dr. Morgan at Arcadia Family practice for an evaluation of right shoulder pain. Plaintiff is not alleging that his right shoulder condition is work-related. During this examination, plaintiff made no mention of left shoulder pain, and Dr. Morgan's notes specifically indicate that plaintiff reported "no acute injury." Dr. Morgan also noted that plaintiff "does a lot of weight lifting".
4. Plaintiff did not seek medical treatment for his alleged left shoulder injury until 26 December 1996, approximately two months after the alleged date of injury. Plaintiff reported to Dr. Morgan that he had experienced shoulder pain for "about the past four to five weeks," or since late November 1996. After diagnosing supraspinatus tendinitis, Dr. Morgan referred plaintiff to Dr. Pollock at Winston Bone and Joint Surgical Associates.
5. On 20 January 1997, plaintiff was examined by Dr. Pollock. According to Dr. Pollock's notes, plaintiff remembered no trauma, injury, or any specific activity which led to or aggravated his left shoulder symptoms. After examination, Dr. Pollock diagnosed mild impingement syndrome and administered a left subacromial steroid injection.
6. During his initial period of treatment with Dr. Pollock and through mid-April 1997, plaintiff regularly played community league basketball twice a week. Plaintiff also coached little league baseball from April through July 1997, and would regularly hit and throw baseballs with the players.
7. On 23 July 1997, plaintiff returned to Winston Bone and Joint and was examined by Dr. Tomberlin for recurrence of left shoulder pain. On 21 August 1997, plaintiff underwent a left shoulder arthrogram, as ordered by Dr. Ritchie. This evaluation showed no evidence of rotator cuff tear; nevertheless, Dr. Ritchie placed plaintiff out of work from 25 August 1997 until a follow up appointment with Dr. Pollock on 4 September 1997.
8. After being restricted from returning to work, plaintiff, through his wife, notified Owens' Masonry for the first time that he wished to file for workers' compensation benefits due to his alleged left shoulder injury. On 24 August 1997, defendant-employer first learned that plaintiff was alleging that his left shoulder impingement was work-related.
9. On 4 September 1997, plaintiff returned to Dr. Pollock. Following an examination and after noting plaintiff reported constantly lifting heavy loads with his left shoulder, Dr. Pollock recommended subacromial decompression and coracoacromial ligament release. These procedures were performed on 10 September 1997. On 27 October 1997, following a good recovery from surgery, Dr. Pollock released plaintiff to pursue activities without restrictions and indicated that plaintiff would have no permanent partial disability.
10. Plaintiff's supervisor, Mr. Palmer, disputes plaintiff's allegation that he injured his left shoulder on 28 October 1996. Mr. Palmer testified that he and the plaintiff rode together to the Wake Forest University Soccer Stadium on the morning of 28 October 1996, and that early that morning before work, plaintiff told him that his shoulder was sore; however, Mr. Palmer was adamant in his testimony that plaintiff did not tell him that he had hurt it on the job.
11. Mr. Palmer also testified that plaintiff's description of digging through piles of precast concrete looking for corner pieces did not happen. He testified that the corner pieces of precast were on a separate pallet ready to be lifted by the forklifts which were on site when the Owens' Masonry crew arrived that morning. He further testified that the only movement which was required of these concrete blocks were to slide them into place, one or two inches, with a 2x4 board used for leverage. In fact, he testified that the precast blocks weighed 450 pounds each and it would have been impossible for plaintiff to pick them up as plaintiff repeatedly alleged.
12. The medical records of evidence also contradict plaintiff's allegation that he was injured on the job. Although plaintiff alleges sustaining an injury on 28 October 1996, he did not inform Dr. Morgan of that during the 5 November 1996 or any subsequent examination. Dr. Morgan's records specifically indicate that plaintiff reported a history of "no acute injury". Plaintiff told Dr. Pollock that he neither sustained any trauma or injury, nor engaged in any activity which aggravated his shoulder pain. Plaintiff also failed to tell either Dr. Ritchie or Dr. Tomberlin about the alleged injury.
13. In addition to plaintiff failing to tell his treating physicians about his alleged injury, Dr. Pollock has opined that plaintiff's shoulder condition did not occur as a result of an accident. Dr. Pollock testified that plaintiff's diagnosed left shoulder condition is an injury which normally occurs gradually rather than traumatically. Dr. Pollock also opined that impingement syndrome is usually a gradual onset sort of phenomenon.
14. Greater weight is assigned to the testimony of Rodney Palmer, as indicated herein, and to the medical opinions of Dr. Pollock as heretofore stated. Plaintiff's allegations lack credibility, and the evidence of record establishes that plaintiff failed to carry his burden of proving that he sustained a work-related injury on 28 October 1996.
15. Plaintiff first gave oral notice to defendant-employer of his alleged injury on 24 August 1997. Plaintiff filed a Form 18 on 17 September 1997. As such, plaintiff failed to give proper notice pursuant to N.C. Gen. Stat. § 97-22, which requires an employee to report an accident within thirty days of its occurrence. Plaintiff has presented no reasonable excuse for failing to notify the employer within that time frame, and the employer was prejudiced by the delay of notification.
16. Dr. Pollock testified that plaintiff's occupation placed him at a greater risk than that of the general public of developing a shoulder impingement. However, Dr. Pollock admitted that he had no real knowledge of the actual duties of plaintiff's employment, and instead relied upon his personal knowledge of what a brick mason's job requires. Dr. Pollock's description of the frequency and type of tasks he believed plaintiff was required to perform does not comport with the descriptions of plaintiff's duties given by the other witnesses with first hand knowledge of those duties. Therefore, Dr. Pollock's opinion regarding the increased risk plaintiff faced in his job is given no weight by the undersigned.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about 28 October 1996, plaintiff did not sustain an injury either as the direct result of a specific traumatic incident of the work assigned, or from an interruption of his normal work routine by the introduction of unusual conditions likely to result in unexpected consequences; therefore, any injury sustained by plaintiff on or about 28 October 1996 did not result from a specific traumatic incident of the work assigned, or from an injury by accident arising out of and in the course of plaintiff's employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. Plaintiff failed to give proper notice of his alleged injury of 28 October 1996, without reasonable excuse, which was prejudicial to the defendants. N.C. Gen. Stat. § 97-22.
3. Plaintiff's claim of injury by accident is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
4. In order to be eligible for compensation based upon a theory of occupational disease pursuant to N.C. Gen. Stat. § 97-53(13), plaintiff must show that (1) the disease is characteristic of persons engaged in the particular employment in question; (2) that it is not an ordinary disease of life to which the public is generally and equally exposed; and (3) that there is a causal connection between the disease and plaintiff's employment.Locklear v. Stedman Corp., 131 N.C. App. 389,508 S.E.2d 795 (1998).
5. The expert medical testimony offered in this case to meet the aforementioned burden of proof was not based upon knowledge of plaintiff's particular occupational duties. Further, there is evidence that plaintiff's condition could be causally connected to a number of activities separate and apart from his occupation. For these reasons, the burden of showing that plaintiff suffers from an occupational disease has not been met and plaintiff is not eligible for compensation on that basis. N.C. Gen. Stat. §97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This the ___ day of December, 1999.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
BSB:jbd